## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**COMSYS SOLUTIONS LLC,**

       Plaintiff,

    v.

**UNIPHORE TECHNOLOGIES INC.,**

       Defendant.

Civil Action No.:

**TRIAL BY JURY DEMANDED**

## COMPLAINT FOR INFRINGEMENT OF PATENT

Now comes, Plaintiff, Comsys Solutions LLC ("Plaintiff" or "Comsys"), by and through undersigned counsel, and respectfully alleges, states, and prays as follows:

### NATURE OF THE ACTION

1.    This is an action for patent infringement under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") to prevent and enjoin Defendant Uniphore Technologies Inc. (hereinafter "Defendant"), from infringing and profiting, in an illegal and unauthorized manner, and without authorization and/or consent from Plaintiff from U.S. Patent No.: 9,324,096 ("the '096 Patent"), which is attached hereto as Exhibit A and incorporated herein by reference, and U.S. Patent No.: 9,672,535 ("the '535 patent"), which is attached hereto as Exhibit B and incorporated herein by reference,  and pursuant to 35 U.S.C. §271, and to recover damages, attorney's fees, and costs.

2.    Collectively, the '096 Patent and the '535 Patent are referred to as the Patents-in-Suit.

### THE PARTIES

3.    Plaintiff is a Delaware limited liability company with its principal place of business at 251 Little Falls Drive, Wilmington, Delaware 19808.

4.      Upon information and belief, Defendant is a corporation organized under the laws of Delaware, having a principal place of business at 1001 Page Mill Road, Building 4, Suite 100-B, Palo Alto, CA 94304. Upon information and belief, Defendant may be served with process c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19809.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§1 *et seq*.

6.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a).

7.      This Court has personal jurisdiction over Defendant by virtue of its systematic and continuous contacts with this jurisdiction and its incorporation in this District, as well as because of the injury to Plaintiff, and the cause of action Plaintiff has risen in this District, as alleged herein.

8.      Defendant is subject to this Court's specific and general personal jurisdiction pursuant to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in this forum state and in this judicial District; and (iii) being incorporated in this District.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b) because Defendant resides in this District under the Supreme Court's opinion in *TC Heartland v. Kraft Foods Group Brands LLC,* 137 S. Ct. 1514 (2017) through its incorporation in this District.

## FACTUAL ALLEGATIONS

The '096 Patent

10.     On April 26, 2016, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '096 Patent, entitled "SYSTEM AND METHOD FOR COMMUNICATING INFORMATION" after a full and fair examination. The '096 Patent is attached hereto as Exhibit A and incorporated herein as if fully rewritten.

11.     Plaintiff is presently the owner of the '096 Patent, having received all right, title and interest in and to the '096 Patent from the previous assignee of record.  Plaintiff possesses all rights of recovery under the '096 Patent, including the exclusive right to recover for past infringement.

12.     To the extent required, Plaintiff has complied with all marking requirements under 35 U.S.C. § 287 with respect to the '096 Patent.

13.     One claimed inventions in the '096 Patent pertains to a computer implemented system. Ex. A at Col.33:42.

14.     As identified in the '096 Patent, prior art systems had technological faults. See Ex. A at Col.1:25-Col.7:59.

15.     More particularly, the '096 Patent identified that characteristics of an information recipient describe the information recipient's state of being. Ex. A at Col.1:48-49. The characteristics most often used to describe an information recipient for purposes of assessing, and enhancing, the communication of information intended to be provided (or delivered, uploaded, downloaded, transferred, or otherwise made available) to the information recipient include known, perceived, or predicted geographic, demographic, psychographic, and behavioristic characteristics. Ex. A at Col.1:49-56.

16.     Prior to the '096 Patent, others had tried to develop to effectively communicate information to one or more information recipients. Ex. A at Col.3:13-15.

17.     In connection with advertising over broadcast television, several companies had developed systems that enable cable and satellite television operators to deliver targeted information (principally commercial advertisements) to their viewers. Ex. A at Col.3:16-20.

18.     The systems employed passive and permissive viewer profiling that captures the demographic, psychographic and behavioral data of viewer's "on-demand" television entertainment requests. Ex. A at Col.3:20-23.

19.     The resulting individualized viewer profiles enabled the owner and operators of cable and satellite television system to deliver targeted television commercials that address the specific interests and brand preferences of a particular viewer, which was believed to maximize the return on investment for advertisers. Ex. A at Col.3:23-27.

20.     A passive system, however, did not require the television viewer to do anything, other than watch television. Ex. A at Col.3:27-30.

21.     Particularly, the inventors of the '096 Patent identified that a need existed for a system and method for actively, dynamically, and seamlessly updating and tailoring information that is being or will be communicated to information recipients who are directly or at least proximate a communications modality using predictive-type characteristics about the recipients such as geographic, demographic, psychographic, and behavioristic characteristics, and inferred, derived, and direct physiological characteristics, which are continuously or nearly continuously being monitored and evaluated. Ex. A at Col.7:50-59.

22.     To address these specific technical problems, the '096 Patent identified a system and method for actively, dynamically and seamlessly updating and tailoring information to be delivered or provided to information recipients over any communications system based on one or more geographic, demographic, psychographic, behavioristic, biological, or other category of

characteristics of one or several of the recipients that are continuously or nearly continuously being monitored and analyzed. Ex. A at Col.7:64-Col.8:5.

23.     Claim 5 of the '096 Patent states:

> "5. A computer-implemented system comprising:
> a portable device for providing information for use in identifying a presence of an information recipient at a pre-determined location, space, or area during a pre-determined time period;
> a biometric sensor in, on or near the information recipient useful in identifying a physiological state or identifying a change in the physiological state of the information recipient;
> a database for storing information of or about the information recipient, the stored information comprising the identified physiological state or the identified change in the physiological state information, and at least one non-physiological state information; and
> an information content generator for generating at least one information element for communication to the information recipient at a time during the pre-determined time period, wherein the information element is selected based on the at least one non-physiological state information and the identified physiological state or the identified physiological change information." Ex. A at Col.33:10-4:10.

24.     Claim 5 of the '096 Patent is a practical application and inventive step of technology that address these aforementioned specific computer-centric problems associated with actively, dynamically and seamlessly updating and tailoring information to be delivered or provided to information recipients over any communications system based on one or more geographic, demographic, psychographic, behavioristic, biological, or other category of characteristics of one or several of the recipients that are continuously or nearly continuously being monitored and analyzed.

25.     Specifically, to address the with the video-centric drawbacks/problems of actively, dynamically and seamlessly updating and tailoring information to be delivered or provided to information recipients, the system of Claim 5 in the '096 Patent requires (a) a portable device for providing information for use in identifying a presence of an information recipient at a pre-

determined location, space, or area during a pre-determined time period; (b) a biometric sensor in, on or near the information recipient useful in identifying a physiological state or identifying a change in the physiological state of the information recipient; (c) a database for storing information of or about the information recipient, the stored information comprising the identified physiological state or the identified change in the physiological state information, and at least one non-physiological state information; and (d) an information content generator for generating at least one information element for communication to the information recipient at a time during the pre-determined time period, wherein the information element is selected based on the at least one non-physiological state information and the identified physiological state or the identified physiological change information.

26.     These specific elements of (a)-(d), as combined, accomplish the desired result of delivering information delivery to overcome the then existing problems in the relevant field of information delivery systems. *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (holding that improving computer security can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem). See also *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018); *Core Wireless Licensing v. LG Elecs., Inc*., 880 F.3d 1356 (Fed. Cir. 2018); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018); *Uniloc USA, Inc. v. LG Electronics USA*, Inc., 957 F.3d 1303 (Fed. Cir. April 30, 2020).

27.     Claim 5 of the '096 Patent provides meaningful details on how to implement its system, and thus adds something inventive.

28.     Namely, the USPTO indicated in its Notice of Allowance that the prior art does not disclose a computer-implemented system that identifies a different content to replace some of a first

information element content based on at least the one non-physiological state information associated with the at least one information recipient or the other information recipients and one or more of the classified at least one response, the identified physiological state, the identified change in the physiological state, and the monitored facial feature of the at least one information recipient. See Exhibit C at Page 9 (Page 5 of the Notice of Allowance).

29.     Thus, the "how to implement" the system of Claim 5 of the '096 Patent corresponds to the USPTO's reasons for allowance. "How" the system operates in an inventive way is due to different content to replace some of a first information element content based on at least the one non-physiological state information associated with the at least one information recipient or the other information recipients and one or more of the classified at least one response, the identified physiological state, the identified change in the physiological state, and the monitored facial feature of the at least one information recipient.

30.     Claims need not articulate the advantages of the claimed combinations to be eligible. *Uniloc USA, Inc. v. LG Elecs. USA, Inc*., 957 F.3d 1303, 1309 (Fed. Cir. 2020).

31.     These specific elements of Claim 5 of the '096 Patent were an unconventional arrangement of elements. *Cellspin Soft, Inc. v. FitBit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019).

32.     Further, regarding the specific non-conventional and non-generic arrangements of known, conventional pieces to overcome an existing problem, the system of Claim 5 in the '096 Patent provides a system that would not preempt all ways of delivering information because it is based (a) a portable device; (b) a biometric sensor in, on or near the information recipient useful in identifying a physiological state or identifying a change in the physiological state of the information recipient; (c) a database; and (d) an information content generator, any of which could be removed or performed differently to provide a computer implemented system to deliver

information. *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016); See also *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).

33.     Based on the allegations, it must be accepted as true at this stage, that Claim 5 of the '096 Patent recites a specific, plausibly inventive computer implemented system for delivering information rather than the general idea of analyzing data. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019), cert. denied sub nom. *Garmin USA, Inc. v. Cellspin Soft, Inc.*, 140 S. Ct. 907, 205 L. Ed. 2d 459 (2020).

34.     Alternatively, there is at least a question of fact that must survive the pleading stage as to whether these specific elements of Claim 5 of the '096 Patent were an unconventional arrangement of elements. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) See also *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), cert. denied, 140 S. Ct. 911, 205 L. Ed. 2d 454 (2020).

The '535 Patent

35.     On June 6, 2017, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '535 Patent, entitled "SYSTEM AND METHOD FOR COMMUNICATING INFORMATION" after a full and fair examination. The '535 Patent is attached hereto as Exhibit B and incorporated herein as if fully rewritten.

36.     Plaintiff is presently the owner of the '535 Patent, having received all right, title and interest in and to the '535 Patent from the previous assignee of record.  Plaintiff possesses all rights of recovery under the '535 Patent, including the exclusive right to recover for past infringement.

37.     To the extent required, Plaintiff has complied with all marking requirements under 35 U.S.C. § 287 with respect to the '535 Patent.

38.     The '535 Patent shares the same specification as the '096 Patent.

39.     The '535 Patent sought to overcome the same problems discussed above with respect to the '096 Patent.

40.     One claimed inventions in the '535 Patent pertains to a computer implemented system. Ex. B at Col.35:13.

41.     Claim 11 of the '535 Patent states:

> "11. A computer-implemented system comprising:
> a sensor for measuring a physiological state of, or obtaining information useful in determining an identity of, one or more information recipients in or at a location, space, or area and at or during a pre-determined time or time period;
> a plurality of information elements each comprising one or more content, the plurality of information elements adapted to being stored in a database or on a computing device;
> a broadcast device for outputting any one of or all of the one or more content of the one or more of the plurality of information elements; and
> a software code adapted to running on the computing device for receiving the information useful in determining the identity of the one or more information recipients, the measured physiological state, an information about the physiological state, and at least one non-physiological state characteristic information of the one or more information recipients, and for selecting the one or more of the plurality of information elements for outputting to the one or more information recipients." Ex. B at Col.35:13-35.

42.     Claim 11 of the '535 Patent is a practical application and inventive step of technology that address these aforementioned specific computer-centric problems associated with actively, dynamically and seamlessly updating and tailoring information to be delivered or provided to information recipients over any communications system based on one or more geographic, demographic, psychographic, behavioristic, biological, or other category of characteristics of one or several of the recipients that are continuously or nearly continuously being monitored and analyzed.

43.     Specifically, to address the with the video-centric drawbacks/problems of actively, dynamically and seamlessly updating and tailoring information to be delivered or provided to

information recipients, the system of Claim 11 in the '535 Patent requires (a) sensor for measuring a physiological state of, or obtaining information useful in determining an identity of, one or more information recipients in or at a location, space, or area and at or during a pre-determined time or time period; (b) a plurality of information elements each comprising one or more content, the plurality of information elements adapted to being stored in a database or on a computing device; (c) a broadcast device for outputting any one of or all of the one or more content of the one or more of the plurality of information elements; and (d) a software code adapted to running on the computing device for receiving the information useful in determining the identity of the one or more information recipients, the measured physiological state, an information about the physiological state, and at least one non-physiological state characteristic information of the one or more information recipients, and for selecting the one or more of the plurality of information elements for outputting to the one or more information recipients.

44.     These specific elements of (a)-(d), as combined, accomplish the desired result of delivering information to overcome the then existing problems in the relevant field of information delivery and transmission. *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (holding that improving computer security can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem). See also *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018); *Core Wireless Licensing v. LG Elecs., Inc*., 880 F.3d 1356 (Fed. Cir. 2018); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018); *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303 (Fed. Cir. April 30, 2020).

45.     Claim 11 of the '535 Patent provides meaningful details on how to implement its system, and thus adds something inventive.

46.     Namely, the USPTO indicated in its Notice of Allowance that the prior art does not disclose the computer-implemented system. See Exhibit D at Page 6-7 (Page 2-3 of the Notice of Allowance).

47.     Thus, the "how to implement" the system of Claim 11of the '535 Patent corresponds to the USPTO's reasons for allowance. "How" the system operates in an inventive way is due to (a) sensor for measuring a physiological state of, or obtaining information useful in determining an identity of, one or more information recipients in or at a location, space, or area and at or during a pre-determined time or time period; (b) a plurality of information elements each comprising one or more content, the plurality of information elements adapted to being stored in a database or on a computing device; (c) a broadcast device for outputting any one of or all of the one or more content of the one or more of the plurality of information elements; and (d) a software code adapted to running on the computing device for receiving the information useful in determining the identity of the one or more information recipients, the measured physiological state, an information about the physiological state, and at least one non-physiological state characteristic information of the one or more information recipients, and for selecting the one or more of the plurality of information elements for outputting to the one or more information recipients.

48.     Claims need not articulate the advantages of the claimed combinations to be eligible. *Uniloc USA, Inc. v. LG Elecs. USA, Inc*., 957 F.3d 1303, 1309 (Fed. Cir. 2020).

49.     These specific elements of Claim 11 of the '535 Patent were an unconventional arrangement of elements. *Cellspin Soft, Inc. v. FitBit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019).

50.     Further, regarding the specific non-conventional and non-generic arrangements of known, conventional pieces to overcome an existing problem, the system of Claim 11 in the '535 Patent provides a system that would not preempt all ways of delivering information because it includes

(a) sensor for measuring a physiological state of, or obtaining information useful in determining an identity of, one or more information recipients in or at a location, space, or area and at or during a pre-determined time or time period; (b) a plurality of information elements each comprising one or more content, the plurality of information elements adapted to being stored in a database or on a computing device; (c) a broadcast device for outputting any one of or all of the one or more content of the one or more of the plurality of information elements; and (d) a software code adapted to running on the computing device for receiving the information useful in determining the identity of the one or more information recipients, the measured physiological state, an information about the physiological state, and at least one non-physiological state characteristic information of the one or more information recipients, and for selecting the one or more of the plurality of information elements for outputting to the one or more information recipients, any of which of these elements (a)-(d) could be removed or performed differently to provide a computer implemented system to deliver information. *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016); See also *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).

51.    Based on the allegations, it must be accepted as true at this stage, that Claim 11 of the '535 Patent recites a specific, plausibly inventive computer implemented system for delivering information rather than the general idea of analyzing data. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019), cert. denied sub nom. *Garmin USA, Inc. v. Cellspin Soft, Inc.*, 140 S. Ct. 907, 205 L. Ed. 2d 459 (2020).

52.    Alternatively, there is at least a question of fact that must survive the pleading stage as to whether these specific elements of Claim 11 of the '535 Patent were an unconventional arrangement of elements. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121

(Fed. Cir. 2018) See also *Berkheimer v. HP Inc*., 881 F.3d 1360 (Fed. Cir. 2018), cert. denied, 140 S. Ct. 911, 205 L. Ed. 2d 454 (2020).

## **DEFENDANT'S PRODUCT(S)**

53.     Defendant commercializes, inter alia, a system that includes all elements of at least one claim of the '096 Patent. More particularly, Defendant commercializes, inter alia, a system that includes all elements of Claim 5 of the '096 Patent.  Specifically, Defendant makes, uses, sells, offers for sale, or imports a system that encompasses that which is covered by Claim 5 of the '096 Patent.

54.     Defendant commercializes, inter alia, a system that that perform all the steps of at least one claim of the '535 Patent. More particularly, Defendant commercializes, inter alia, methods that perform all the steps recited in Claim 11 of the '535 Patent.  Specifically, Defendant makes, uses, sells, offers for sale, or imports a method that encompasses that which is covered by Claim 11 of the '535 Patent.

The Accused Instrumentality compared to the '096 Patent

55.     Defendant offers solutions, such as the "Emotion Research Lab App" system (the "Accused Instrumentality")[1], that is a computer implemented system.  A non-limiting and exemplary claim chart comparing the Accused Instrumentality of Claim 5 of the '096 Patent is attached hereto as Exhibit E and is incorporated herein as if fully rewritten.

56.     As recited in Claim 5 of the '096 Patent, a system, at least in internal testing and usage, utilized by the Accused Instrumentality includes a portable device for providing information for use in identifying a presence of an information recipient at a pre-determined location, space, or area during a pre-determined time period.  See Ex. E.

---

[1] The Accused Instrumentality is just one of the products provided by Defendant, and Plaintiff's investigation is on-going to additional products to be included as an Accused Instrumentality that may be added at a later date.

57.     As recited in Claim 5 of the '096 Patent, the system, at least in internal testing and usage, utilized by the Accused Instrumentality includes a biometric sensor in, on or near the information recipient useful in identifying a physiological state or identifying a change in the physiological state of the information recipient. See Ex. E.

58.     As recited in Claim 5 of the '096 Patent, the system, at least in internal testing and usage, utilized by the Accused Instrumentality includes a database for storing information of or about the information recipient, the stored information comprising the identified physiological state or the identified change in the physiological state information, and at least one non-physiological state information. See Ex. E.

59.     As recited in Claim 5 of the '096 Patent, the system, at least in internal testing and usage, utilized by the Accused Instrumentality includes an information content generator for generating at least one information element for communication to the information recipient at a time during the pre-determined time period, wherein the information element is selected based on the at least one non-physiological state information and the identified physiological state or the identified physiological change information. See Ex. E.

60.     The elements described in the preceding paragraphs are covered by at least Claim 5 of the '096 Patent. Thus, Defendant's use of the Accused Instrumentality is enabled by the system described in the '096 Patent.

The Accused Instrumentality compared to the '535 Patent

61.     Defendant offers solutions, such as the "Emotion Research Lab App" system (the "Accused Instrumentality")[2], that is a computer implemented system. A non-limiting and exemplary claim

---

[2] The Accused Instrumentality is just one of the products provided by Defendant, and Plaintiff's investigation is on going to additional products to be included as an Accused Instrumentality that may be added at a later date.

chart comparing the Accused Instrumentality of Claim 11 of the '535 Patent is attached hereto as Exhibit F and is incorporated herein as if fully rewritten.

62.     As recited in Claim 11 of the '535 Patent, the system, at least in internal testing and usage, utilized by the Accused Instrumentality includes a sensor for measuring a physiological state of, or obtaining information useful in determining an identity of, one or more information recipients in or at a location, space, or area and at or during a pre-determined time or time period.  See Ex. F.

63.     As recited in Claim 11 of the '535 Patent, the system, at least in internal testing and usage, utilized by the Accused Instrumentality includes a plurality of information elements each comprising one or more content, the plurality of information elements adapted to being stored in a database or on a computing device. See Ex. F.

64.     As recited in Claim 11 of the '535 Patent, the system, at least in internal testing and usage, utilized by the Accused Instrumentality includes a broadcast device for outputting any one of or all of the one or more content of the one or more of the plurality of information elements. See Ex. F.

65.     As recited in Claim 11 of the '535 Patent, the system, at least in internal testing and usage, utilized by the Accused Instrumentality includes a software code adapted to running on the computing device for receiving the information useful in determining the identity of the one or more information recipients, the measured physiological state, an information about the physiological state, and at least one non-physiological state characteristic information of the one or more information recipients, and for selecting the one or more of the plurality of information elements for outputting to the one or more information recipients. See Ex. F.

66.    The elements described in the preceding paragraphs are covered by at least Claim 11 of the '535 Patent. Thus, Defendant's use of the Accused Instrumentality is enabled by the system described in the '535 Patent.

## INFRINGEMENT OF THE PATENTS-IN-SUIT

Count 1: Infringement of the '096 Patent

67.    Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs

68.     In violation of 35 U.S.C. § 271, Defendant is now, and has been directly infringing, either literally or under the doctrine of equivalents, the '096 Patent.

69.    Defendant has had knowledge of infringement of the '096 Patent at least as of the service of the present Complaint.

70.     Direct Infringement. Defendant has directly infringed and continues to directly infringe at least one claim of the '096 Patent by making, using, at least through internal testing or otherwise, offering to sell, selling and/or importing, without limitation, the Accused Instrumentality without authority in the United States, and will continue to do so unless enjoined by this Court.  As a direct and proximate result of Defendant's direct infringement of the '096 Patent, Plaintiff has been and continues to be damaged. See Ex. E.

71.    The Accused Instrumentality directly infringes, either literally or under the doctrine of equivalents, Claim 5 of the '096 Patent.

72.    Induced Infringement. Defendant has induced others to infringe Claim 5 of the '096 Patent by providing the Accused Instrumentality and encouraging infringement, knowing that the acts Defendant induced constituted patent infringement, and its encouraging acts actually resulted in direct patent infringement either literally or under the doctrine of equivalents.

16

73.     Contributory Infringement. Defendant actively, knowingly, and intentionally has been and continues materially contribute to their own customers' infringement of Claim 5 of the '096 Patent, literally or by the doctrine of equivalents, by selling the Accused Instrumentality to their customers for use in end-user products in a manner that infringes one or more claims of the '096 Patent. Moreover, the Accused Instrumentality is not a staple article of commerce suitable for substantial non-infringing use.

74.     By engaging in the conduct described herein, Defendant has injured Plaintiff and is thus liable for infringement of the '096 Patent, pursuant to 35 U.S.C. § 271.

75.     Defendant has committed these acts of infringement without license or authorization.

76.     As a result of Defendant's infringement of the '096 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

77.     Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court.  As such, Plaintiff is entitled to compensation for any continuing and/or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement.

78.     Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim charts that it provides with this Complaint.  The claim chart depicted in Exhibit E is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

Count 2: Infringement of the '535 Patent

79.     Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs

80.      In violation of 35 U.S.C. § 271, Defendant is now, and has been directly infringing, either literally or under the doctrine of equivalents, the '535 Patent.

81.     Defendant has had knowledge of infringement of the '535 Patent at least as of the service of the present Complaint.

82.      Direct Infringement. Defendant has directly infringed and continues to directly infringe at least one claim of the '535 Patent by making, using, at least through internal testing or otherwise, offering to sell, selling and/or importing, without limitation, the Accused Instrumentality without authority in the United States, and will continue to do so unless enjoined by this Court.  As a direct and proximate result of Defendant's direct infringement of the '710 Patent, Plaintiff has been and continues to be damaged. See Ex. F.

83.     The Accused Instrumentality directly infringes, either literally or under the doctrine of equivalents, Claim 11 of the '535 Patent.

84.     Induced Infringement. Defendant has induced others to infringe Claim 11 of the '535 Patent by providing the Accused Instrumentality and encouraging infringement, knowing that the acts Defendant induced constituted patent infringement, and its encouraging acts actually resulted in direct patent infringement either literally or under the doctrine of equivalents.

85.     Contributory Infringement. Defendant actively, knowingly, and intentionally has been and continues materially contribute to their own customers' infringement of Claim 11 of the '535 Patent, literally or by the doctrine of equivalents, by selling the Accused Instrumentality to their customers for use in end-user products in a manner that infringes one or more claims of the '535

Patent. Moreover, the Accused Instrumentality is not a staple article of commerce suitable for substantial non-infringing use.

86.     By engaging in the conduct described herein, Defendant has injured Plaintiff and is thus liable for infringement of the '535 Patent, pursuant to 35 U.S.C. § 271.

87.     Defendant has committed these acts of infringement without license or authorization.

88.     As a result of Defendant's infringement of the '535 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

89.     Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court.  As such, Plaintiff is entitled to compensation for any continuing and/or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement.

90.     Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim charts that it provides with this Complaint.  The claim chart depicted in Exhibit F is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

## DEMAND FOR JURY TRIAL

91.     Plaintiff demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a. That Defendant be adjudged to have directly infringed the Patents-in-Suit either literally or under the doctrine of equivalents;

b. An accounting of all infringing sales and damages including, but not limited to, those sales and damages not presented at trial;

c. That Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be permanently restrained and enjoined from directly infringing the Patents-in-Suit;

d. An award of damages pursuant to 35 U.S.C. §284 sufficient to compensate Plaintiff for the Defendant's past infringement and any continuing or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

e. An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. §284;

f. That Defendant be directed to pay enhanced damages, including Plaintiff's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. §285; and

g. That Plaintiff be granted such other and further relief as this Court may deem just and proper.

Dated: June 6, 2022

Respectfully submitted,

CHONG LAW FIRM PA

*/s/ Jimmy Chong*
Jimmy Chong (#4839)
2961 Centerville Road, Suite 350
Wilmington, DE 19808
Telephone: (302) 999-9480
Facsimile: (302) 800-1999
Email: chong@chonglawfirm.com

Howard L. Wernow (*Pro hac vice forthcoming*)
SAND, SEBOLT & WERNOW CO., LPA
Aegis Tower – Suite 1100
4940 Munson Street NW
Canton, Ohio 44718
Telephone: (330) 244-1174
Facsimile: (330) 244-1173
Email: Howard.Wernow@sswip.com

ATTORNEYS FOR PLAINTIFF